# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JOSEPH CASEY CARNEY** | § | |
| | § | |
| **V.** | § | **1:17-CV-00013-AWA** |
| | § | |
| **NANCY A. BERRYHILL,** | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Brief (Dkt. No. 15), filed on June 20, 2017; Defendant's Brief (Dkt. No. 18), filed on August 15, 2017; and Plaintiff's Reply (Dkt. No. 19), filed August 25, 2017. Also, before the Court is the Social Security Record filed in this case. (Cited as "Tr.")

### I. GENERAL BACKGROUND

On February 5, 2013, Plaintiff Joseph Casey Carney ("Carney") filed his Applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance Benefits ("DIB"), alleging in both applications that he became disabled on December 1, 2009, due to herniated discs, back pain, and head pain. Tr. at 50, 195-203, 224. After the agency denied Carney's applications initially and on reconsideration, he requested an administrative hearing, which he attended with his representative Angenette Saltsman on April 13, 2015, before ALJ Osly F. Deramus. Tr. at 28-49, 50-79, 96. Carney was 33 years-old at the time of the hearing and testified that he is a high school graduate with two years of college education and was previously employed as a heating and Air Conditioning installer/servicer (DOT 637.261-014). *Id.*

After reviewing the evidence and testimony, the ALJ issued his decision on August 25, 2015, finding that Carney was not disabled as defined by the Social Security Act. Tr. at 15-23. On

November 7, 2015, the Appeals Council concluded that there was no basis for review and that the ALJ's decision was the "final decision of the Commissioner of Social Security." Tr. at 1. Carney has exhausted his administrative remedies and now seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).

## II.  LEGAL STANDARDS

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). To determine if a claimant is disabled the Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in substantial gainful activity, will not be found to be disabled no matter what the medical finding are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. § 404.1520. A finding of disability or no disability at any step "is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). The claimant has the burden of proof for the first four steps; however, at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If

the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (internal quotation marks omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance —in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (internal quotation marks omitted). The Court considers "four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Id.* at 174. However, a reviewing court "may not reweigh the evidence, try the issues *de novo*, or substitute [its] judgment for that of the [Commissioner]." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders,* 914 F.2d at 617. ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); *see also* 42 U.S.C. § 405(g).

### III. THE ALJ'S FINDINGS

The ALJ employed the regulations' five-step sequential evaluation process to determine whether Carney was disabled. 20 C.F.R. § 404.1520(a). Carney was represented at the hearing by

3

attorney Angenette Saltsman (referred to in the hearing transcript as "Ms. Altman"). Carney and a vocational expert, Dr. Thomas Eyres, testified at the hearing. In his decision, the ALJ found Carney met the insured status requirements of the Social Security Act through March 30, 2015. Tr. at 17. The ALJ found that Carney did not engage in substantial gainful activity during the period after his alleged onset date of December 1, 2009. *Id.* The ALJ found that Carney suffered from severe impairments of mild degenerative joint disease of the thoracic and lumbar spine, chronic cervical strain, hypertension, and headaches. *Id.* He also found that Carney does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. at 17-18. The ALJ determined that Carney was unable to perform his past relevant work, but that there were jobs that existed in significant numbers in the national economy that Carney could perform, and he was therefore not disabled. Tr. at 18-19.

On August 25, 2015, the ALJ issued his opinion concluding that Carney was not disabled under the Social Security Act. Specifically, the ALJ determined that Carney has severe medical impairments of mild degenerative joint disease of the thoracic and lumbar spine, chronic cervical strain, hypertension, and headaches. 20 C.F.R. 404.1520(c) and 416.920(c). The ALJ also determined that such impairments did not meet the medical criteria of any impairment found in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further found that Carney's subjective complaints and alleged functional limitations were not fully credible and were not supported by the objective medical evidence. The ALJ opined that Carney retained the residual functional capacity to perform a light level of work that involves lifting and/or carrying, pushing and/or pulling up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking for

4

about 6 hours in an 8-hour workday; and sitting for about 6 hours in an 8-hour workday. Although the ALJ found that Carney could not perform his past relevant work as a heating and A/C installer/servicer, the ALJ concluded that Carney could perform a significant range of light work in the national economy, such as working as a fast-food employee. Thus, the ALJ concluded that Carney was not disabled under the Social Security Act.

Carney argues that the ALJ's opinion was not based on substantial evidence and was not based on the proper legal standards because (1) the ALJ failed to give proper weight to the medical opinion evidence of record; (2) the ALJ failed to properly evaluate Carney's subjective complaints; and (3) the ALJ's determination of RFC is not supported by substantial evidence.

## IV. ANALYSIS

**A.     The ALJ gave proper weight to the medical evidence of record.**

Carney argues that the ALJ impermissibly ignored the treatment relationship Carney had with chiropractor Dr. Tracie L. Schwab whom Carney refers to as a "treating source." Dkt. No. 15 at 15-17. The Court disagrees and finds that the ALJ properly weighed the medical opinion evidence of record. Tr. at 21, 321-22 457-58. First, the Court notes that Ms. Schwab was neither a treating source nor an acceptable medical source. To be a treating source, a medical professional must be an acceptable medical source, but chiropractors are not considered acceptable medical sources under the regulations. 20 C.F.R. §§ 404.1502, 404.1513(a), (d)(1), 416.902, 416.913(a), (d)(1). ALJs must consider medical opinions in accordance with regulatory factors such as the treatment and examining relationship, supportability, consistency, and the source's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors explicitly apply only to the consideration of medical opinions, which the regulations define as opinions by acceptable medical sources. *Id.* §§ 404.1527(a)(2), (c),

5

416.927(a)(2), (c). Because Dr. Schwab was not an acceptable medical source, her statements are not medical opinions that must be evaluated according to the regulatory factors. Accordingly, the ALJ did not impermissibly ignore the treating relationship Carney had with Dr. Schwab.

Second, the Court notes that the ALJ did in fact consider Dr. Schwab's statements in accordance with agency policy. Agency policy provides that ALJs may consider opinions from non-acceptable medical sources such as chiropractors, and may apply the factors in doing so, but are not required to by any specific rules. *See* Social Security Ruling (SSR) 06-3p, 2006 WL 2329939, at *2. The ALJ considered Dr. Schwab's opinion that Carney could not lift or carry any weight; stand, walk, or sit for more than one hour total in an eight-hour workday; or work for more than fifteen minutes at a time without needing a break. Tr. at 21, 321-22, 457-58. The ALJ gave this opinion "little weight," explaining that the objective evidence and Dr. Schwab's own treatment notes were inconsistent with such limitations.

The ALJ examined Dr. Schwab's treatment notes and found that they do not contain any objective medical findings and thus failed to support the extreme limitations she imposed. Tr. at 290-317, 434-55, 460-96. *Cf.* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *id.* §§ 404.1527(a), 416.927(a) (a finding of disability requires the impairment to be proven with "medically acceptable clinical and laboratory diagnostic techniques."). In addition, the ALJ explained that her opinion was inconsistent with the objective medical evidence, which showed Carney received no consistent treatment by a physician, had normal to mild clinical findings in his back and neck, and failed to seek treatment with a physician until more than four months after the alleged onset.

Notably, the ALJ observed that Carney rarely sought treatment from a physician for alleged symptoms of chronic back and neck pain and when he did so, it was only to obtain a referral for chiropractic treatment. Tr. at 19, 431-32; *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (gaps in treatment or failure to seek regular medical care for a condition is indicative that a condition is non-disabling). For example, Carney visited Dr. Andre S. Chen, his primary care physician for neck pain on April 19, 2010, but Dr. Chen's physical examination showed no abnormalities. Tr. at 19, 431. Carney did not return to Dr. Chen until one year later to request a referral to his chiropractor. Carney did not see a physician again until nearly two years later, on January 2, 2012, when he requested another referral to his chiropractor from Dr. Vimal T. George for low and center back pain. *Id.* This examination again revealed no abnormalities with full lower extremity strength, normal gait, normal spinal alignment and mobility, and no spinal deformity or tenderness. *Id.* On June 27, 2013, Dr. Flint K. DeShazo performed a consultative examination of Carney. Tr. at 324-26. The examination showed some reduced range of motion in the spine but no evidence of extremity bone or tissue destruction or deformity, and showed negative straight leg testing bilaterally, normal heel and toe walking, and normal strength and reflexes in the extremities. Tr. 325-26. Dr. Deshazo observed that Carney ambulated with a cane and had an antalgic gait, but after noting that there was no other evidence that Carney used a cane or had an abnormal gait, the ALJ found that the alleged need for a cane was unsupported by the totality of the evidence. Tr. at 20.

When Carney went to the emergency room for an issue unrelated to back or neck problems in August 2013, physical examinations showed normal neck and back and normal gait once more, and CT scans were unremarkable. Tr. at 341, 344-45, 352-53, 357, 365, 369. At follow-ups with Dr. George on August 9, August 13, September 5, 2013, and January 22, 2014, Carney did not

7

complain of neck or back pain and his physical examinations were normal. Tr. at 379-80, 389-90, 498-99, 503-04. Carney also received a consultative spinal x-ray on June 25, 2015, which showed only mild degenerative changes and no acute abnormality. Tr. at 19, 557. There is substantial evidence in the record to support the ALJ's finding that Dr. Schwab's opined limitations were unsupported by medical evidence.

Carney also argues that the ALJ erred because he did not give "any substantial weight to any treating or examining source." Dkt. No. 15, at 17. The Court disagrees. The acceptable medical sources who examined Carney did not provide medical opinions, and the State agency physicians who did provide medical opinions opined that Carney's impairments were nonsevere. Tr. at 21, 54, 60, 68, 75. The ALJ determined the evidence as a whole did not support either Dr. Schwab's extreme limitations or the State agency physicians' opinions that the impairments were nonsevere. Instead, the ALJ synthesized the medical statements and the objective medical evidence showing normal findings and a lack of consistent treatment, and from that arrived at an RFC supported by the evidence. Tr. at 18-21. The task of weighing evidence is within the ALJ's discretion, and the ALJ has the responsibility to resolve conflicts in the evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

The Court finds that the ALJ's evaluation of the medical evidence is supported by substantial evidence and was properly weighed.

**B.      Carney's subjective complaints.**

Carney next complains that the ALJ did not properly evaluate Carney's subjective complaints and consider all of the evidence in assessing Carney's symptoms. The ALJ first determined that Carney's impairments could reasonably be expected to cause the alleged symptoms, and then

determined that the record did not support Carney's statements concerning the intensity, persistence, and limiting effects of those symptoms. Tr. at 18-19. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96-7p, 1996 WL 374186, at *2. The ALJ has the sole responsibility of resolving conflicts in the evidence and evaluating a claimant's subjective complaints. *Masterson*, 309 F.3d at 272. In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ considers all of the evidence, including objective medical evidence, medical opinion evidence, and the claimant's subjective statements. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *2. The ALJ also considers the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; any treatment other than medication; any other measures used to alleviate the symptoms; and any other factors concerning functional limitations caused by the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ considered the objective medical evidence, noted the number of "normal" findings, and narratively discussed the record evidence. Tr. at 18-21. The ALJ also considered medical opinion evidence, including statements by Carney's chiropractor and the State agency physicians. Tr. at 21. The ALJ's discussion of Carney's April 13, 2015, administrative hearing testimony shows that he considered Carney's subjective statements regarding his abilities (he could lift up to twenty pounds), his daily activities (alleged difficulty grooming, dressing, and driving), and the details of his alleged pain (alleged need for a cane, alleged need to alternate positions, and difficulty concentrating). Tr. at 19. The ALJ also considered Carney's hypertension, and that it was controlled with medication and therefore not disabling. *See Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir.

1987) (impairment controlled with medication not disabling). Carney challenges the ALJ's consideration of Carney's noncompliance with hypertension medication, claiming that the ALJ should have considered his reason for not taking it was an adverse effect. The Court disagrees. The medication to which Carney had an adverse effect was to a different medication than the one he was supposed to be taking, and Carney stated that he did not take his medication because he was "just stubborn." Tr. at 333-35, 347-48. Carney's failure to follow prescribed treatment for a condition undermines his allegations that his condition is disabling. *See Johnson v. Sullivan*, 894 F.2d 683, 685. Furthermore, the ALJ also took into consideration that Carney's treatment consisted mostly of conservative chiropractic care and that Carney only saw his physicians intermittently for chiropractic referrals. Tr. at 20. Carney refused physical therapy and had no need for surgery, and did not show any evidence that chiropractic adjustments are any more than conservative treatment. Conservative treatment is evidence that subjective complaints of pain are not disabling. *See Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).

Given the foregoing evidence, the Court finds that the ALJ properly evaluated Carney's credibility and subjective complaints in accordance with agency regulations and policy, and that this evaluation is substantiated by the record as a whole.

C.   **The ALJ's RFC determination is supported by substantial evidence.**

The Court finds that substantial evidence supports the ALJ's determination of Carney's RFC. The RFC is an administrative assessment of the extent to which a claimant's medically determinable impairments, including any related symptoms, may cause physical or mental limitations or restrictions that may affect the individual's capacity to do work-related physical and mental activities. SSR 96-8p, 1996 WL 374184, at *2. The ALJ determines RFC based on the totality of

the evidence, and the responsibility for assessing a claimant's work capacity is reserved solely to the ALJ. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ is "responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The standard for reviewing the ALJ's decision is highly deferential, and the ALJ's decision is final when substantial evidence supports it. *Johnson*, 864 F.2d at 343; *Leggett*, 67 F.3d at 564.

Carney argues that the ALJ impermissibly substituted his own opinion for that of a medical expert and based his decision on his own "untutored assessment of the evidence." The Court rejects this argument. The ALJ stated multiple times that he considered all of the evidence, including Carney's normal objective medical findings, lack of non-conservative treatment, Carney's own testimony, the ALJ's observations at the hearing, and Carney's noncompliance with prescribed medication. Tr. at 17-20. An ALJ should interpret medical evidence in fashioning an RFC and need not base the RFC finding on any one non-controlling medical opinion. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). The ALJ considered the opinions of the State agency physicians and Dr. Schwab, and synthesized them along with the objective medical evidence and symptom evaluation to arrive at the RFC that the objective medical evidence supported.

Carney disputes the ALJ's finding that he did not need a cane, stating that the record contains "significant other evidence that Carney required a cane," and that not including the use of a cane in calculating the RFC was erroneous. To support this allegation, Carney cites Dr. Schwab's May 14, 2013, letter which provides evidence only that Carney needed a cane during exacerbations and not constantly. Tr. at 457. Even if this statement was credited, a reasonable mind could conclude that

it is not necessary that a cane-related limitation be included in the RFC. Thus, the ALJ's RFC determination is supported by substantial evidence.

## IV. CONCLUSION

Based upon the foregoing, the Court finds that substantial evidence supports the Commissioner's decision, and the Commissioner applied the correct legal standards in this case. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). The decision of the Commissioner of the Social Security Administration is therefore AFFIRMED.

SIGNED this 29 day of June, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE